INTERSTATE QUALITY SERVICES, INC., Petitioner,

v.

RAILROAD RETIREMENT BOARD, Respondent.

No. 95–1313.

United States Court of Appeals, District of Columbia Circuit.

Argued March 18, 1996.

Decided May 17, 1996.

Jeffrey E. Schiller, Chicago, IL, argued the cause for the petitioner. John L. Oberdorfer, Washington, DC, was on brief.

Marguerite P. Dadabo, General Attorney, Railroad Retirement Board, argued the cause for the respondent. Catherine C. Cook, General Counsel, Steven A. Bartholow, Deputy General Counsel, and Thomas W. Sadler, Assistant General Counsel, were on brief.

Before: BUCKLEY, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Petitioner Interstate Quality Services, Inc., d/b/a Interstate Reloads, Inc. (Reloads) is an Illinois corporation and a wholly owned subsidiary of Iowa Interstate Railroad, Ltd. (Iowa Interstate), a freight carrier operating between Blue Island, Illinois and Council Bluffs, Iowa. Reloads operates a freight transfer and storage business in Blue Island which primarily unloads freight from trains or trucks, stores freight in its warehouses and reloads freight onto trains or trucks. In

addition, Reloads contracts for transportation of freight by truck and leases part of its premises to a lumber wholesaler. In a decision dated March 16, 1993, the Railroad Retirement Board (Board) ruled that Reloads is an "employer" within the meaning of the Railroad Retirement Act, 45 U.S.C. § 231(a)(1)(ii), (RRA) and the Railroad Unemployment Insurance Act, 45 U.S.C. § 351(a), (RUIA). Reloads has petitioned for review of that decision. For the following reasons we deny the petition.

■ The RRA and the RUIA both define "employer" to include not only a railroad carrier but also any company that (1) is "directly or indirectly owned or controlled by" a railroad carrier or "under common control" with such a carrier and (2) "operates any equipment or facility or performs any service (except trucking service, casual service, and the casual operation of equipment or facilities) in connection with the transportation of passengers or property by railroad, or the receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, or handling of property transported by railroad." 45 U.S.C. § 231(a)(1); 45 U.S.C. § 351(a). Reloads does not dispute that, as a wholly owned subsidiary of Iowa Interstate, it satisfies the first criterion but vigorously contests the Board's conclusion that it meets the second. We conclude that under the unambiguous statutory language and the Board's regulations, which Reloads does not challenge, the Board's determination must be upheld. Given the bases for our decision, we need not resolve whether deference is owed the Board's interpretation of the statutory language under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We do note that the Railroad Retirement Tax Act, administered by the Internal Revenue Service, contains an almost identical

definition of "employer," *see* 26 U.S.C. § 3231(a), and deference to each agency's interpretation might lead to conflicting results. *See Livingston Rebuild Center v. Railroad Retirement Board,* 970 F.2d 295, 299 (7th Cir.1992) ("steer[ing] clear of the subject" of deference to Board's employer determinations "because the Board is not the only entity involved" and "[a]ppellate deference to the Commissioner [of Internal Revenue], the Board, and trial courts would produce a muddle if these institutions should disagree"). *But see Itel Corp. v. United States Railroad Retirement Board,* 710 F.2d 1243, 1245 (7th Cir.1983) ("Congress has entrusted the Board with the authority to make employer/employee determinations under the statutes it administers. 45 U.S.C. §§ 231f(b)(1), 362(*l* ). The Board's interpretation of RRA and RUIA is entitled to deference if it has a reasonable basis in law.") (citations omitted).

Reloads first argues that the services it performs, including the loading, unloading and storage of rail freight, are not "obviously essential to the functioning of the railroad" or "inextricably linked to the operation of the railroad." Brief of Petitioner at 19 (quoting *Railroad Concrete Crosstie Corp. v. Railroad Retirement Board,* 709 F.2d 1404, 1411 (11th Cir.1983)). Perhaps so—but they need not be. The statutes require that services be performed merely "in connection with" rail activity and the Supreme Court long ago held that "loading and unloading services ... are services performed 'in connection with the transportation of * * * property by railroad.'" *Railroad Retirement Board v. Duquesne Warehouse Co.,* 326 U.S. 446, 455, 66 S.Ct. 238, 242, 90 L.Ed. 192 (1946).[1]

■ Reloads next argues that it is not an employer because its rail services are not "functionally dominant in relation to its other business." But, again, "functional domi-

---

1. In *Railroad Concrete Crosstie Corp.,* the Eleventh Circuit, rebutting the petitioner's argument that the manufacture and sale of a product do not constitute services, held that if a subsidiary provides its parent carrier with a *product* that is "inextricably linked to the operation of the railroad" and "obviously essential to the functioning of the railroad," "the subsidiary's provision of the product constitutes a service to the parent within the meaning of 45 U.S.C.A. §§ 231(a)(1) and 351(a)." 709 F.2d at 1411. The court did not, however, purport to establish the quoted characteristics as prerequisites to satisfy the statute.

nance" is not required under the statute or under the Board's regulations which construe "in connection with" to mean "reasonably directly related, functionally or economically." 20 C.F.R. 202.7.[2] Both the statutes and the regulations exempt from coverage companies that perform only "casual" rail service, which the regulations define as service that either "is so irregular or infrequent as to afford no substantial basis for an inference that such service or operation will be repeated" or "is insubstantial." 20 C.F.R. § 202.6. Here, however, the Board correctly concluded that Reloads' rail-related service "cannot be considered insubstantial" and "is not casual in nature." B.C.D. No. 95–26 at 5, 6. The undisputed evidence, as recited in the Board's decision, shows that in each of the four years from 1989–92, Reloads' staff spent a majority of its time (63.6% to 87.2%) performing such services and that a substantial percentage of that time (36.5% to 56.3%) was devoted to Iowa Interstate.

Reloads argues the Board's determination conflicts with other Board decisions that have found railroad-affiliated companies not to be covered employers—a conflict that might, had we found the statute ambiguous and subject to the Board's reasonable interpretation, require that we remand to the Board for it to explain the departure from past precedent. *See Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir. 1970). Reloads points to *In re VMV Enters.,* B.C.D. No. 93–79 (Oct. 19, 1993), in which the Board concluded a locomotive repair company was not an employer although 58.2% of its work was performed for commercial rail carriers. The Board's determination there, however, had nothing to do with the total amount of rail service the company performed but instead rested on the fact that it provided only "minimal service" to the affiliated railroad.[3] As already noted, that is not

the case here. Reloads also relies on *Pabtex, Inc.,* in which the Board again found the company was not a statutory "employer." In *Pabtex,* however, all of the company's services were performed for independent brokers and not for the related carrier. Here, by contrast, Reloads provides services directly to Iowa Interstate. Finally, Reloads relies on two letter decisions of the Board's General Counsel. *See Carnegie–Illinois Steel Corp.,* L39–811 (1939) (DA A–42–44); *Pullman Standard Car Manufacturing Co.,* L40–403 (1940) (DA A–45–46). In each, the General Counsel found that the sale of commodities by a company to a related railroad was not a service because the railroad was only one of the company's many customers and was treated no differently from its others. *Cf. Railroad Concrete Crosstie Corp. v. Railroad Retirement Board,* 709 F.2d 1404, 1408 (11th Cir.1983) (noting that while manufacture of commodity may not by itself be service, "[t]he provision of a steady, dependable supply of an essential item is a service."). Here, Reloads is not in the business of manufacturing or selling but instead provides services to its customers, including substantial services to Interstate Iowa.

For the preceding reasons the petition for review is

*Denied.*

---

**2.** When a company performs a service for a related carrier so as to come within the statutory definition of "employer" but is "principally engaged in some other business," the Board *then* considers the "functional dominance or subservience" of the rail service in determining whether to treat the entire company as the covered employer or only "some separable and identifiable enterprise" thereof. *See* 20 C.F.R. § 202.9(a)(2).

**3.** The company's service to the affiliated railroad constituted only 2.5% of its own business and was equal to only 3.2% of the repair work the railroad performed for itself.